Lewis Pierce and others, petitioners for certiorari,
Moses M. Butler, administrator,
Sherman W. Hapgood,
*vs.*
The County Commissioners of Franklin County.

*Certiorari. R. S. of* 1857, *c.* 18, §§ 30–33, *amended by act of* 1858, *c.* 23. *Tax. Ways in unincorporated townships.*

Where the county commissioners under R. S. of 1857, c. 18, § 30, as amended by Public Laws of 1858, c. 23, have ordered the owners of land, over which a road located in an unincorporated township passes, to build the road, and then closed their proceedings, they will be quashed upon certiorari.

Under that statute the land-owners had the privilege of paying their proportional expense of building the road in labor; but the expense of its construction was to be defrayed by assessing upon those lands enhanced in value thereby a sum sufficient to build it; and an omission to lay such an assessment, as part of the original proceedings, will vitiate them.

In 1869 the county commissioners assumed to lay an assessment, ostensibly to "repair" a road which the land-owners had been thus ordered to build three years before, but had not, in fact, built; *held*, that such assessment was void, because the commissioners had no authority to expend taxes upon a road never legally located; also, because no notice was ever given to the land-owners of the assessment.

On agreed facts.

The plaintiffs' petitions made part of these cases and it was

agreed that the statements therein contained were true. *Mutato nomine*, they were all alike, and the two last named were submitted to abide the result of the first. They set out, substantially, that at the April term, 1864, of the court of county commissioners for Franklin county, on the petition of Abram Reed and others for a new location of a road in township No. 3, second range, the commissioners ordered notice, and, on the tenth day of October, 1864, proceeded to view the route of the proposed location, and hear the parties, and at their December term, 1864, adjudged that common convenience and necessity required the location as prayed for, which was accordingly made by them. Their record, recited in these petitions, states that the road prayed for was "on or over townships or tracts of land not within any town or plantation required to assess a State or county tax, the owners thereof being unknown." After fixing the limits of the way the commissioners say: "and we decide that each township or tract of land over which said location passes will thereby be sufficiently enhanced in value to require the proprietors or owners thereof to make and open said road across their respective lands; and we hereby require and order said proprietors or owners to make and open said road accordingly" . . . "and in our opinion no person sustains any damage by reason of said location." Three years were allowed the owners of lands over which the road passed to take off their wood, timber or trees, and to build the road. The commissioners ordered this return to be placed on file and the case continued to their April term, 1865, when, "no petition having been presented for increase of damages, it was ordered . . . that the proceedings upon said petition be closed and record thereof made."

The law then in force, relating to this subject, was R. S. of 1857, c. 18, §§ 30–33, as amended by the Public Laws of 1858, c. 23, which provided that, in cases like this, the commissioners might locate a way, the expenses of making and opening it to be paid by the owners of the lands over which it passed, "in proportion to their interests in the lands," or partly by such owners and partly by the county, as to the commissioners seemed just.

The thirty-third section of that chapter, as amended, provided that when such way was laid out the commissioners should "decide whether any tract, or part thereof, will thereby be enhanced in value ; make as many divisions as are equitable, conforming as nearly as convenient to known divisions, or separate ownerships; and assess upon each division adjudged to be enhanced in value a sum proportionate to the value and to the benefits likely to result to it from the opening of the way ;" the assessment to be made at such rates per acre, as to raise the required sum. The forty-first section of the same chapter directed that the commissioners should at the time when the assessment was made, or within three months thereafter, appoint a suitable agent to superintend the disbursement of the sums so assessed; and provided that, "any owners of land so assessed may pay his proportion of the assessment to the county treasurer, or in labor upon the road under the direction of the agent," within a time specified, upon giving the required notice of his intention.

From the twenty-seventh of April, 1865, when the proceedings and record were closed, nothing was done toward making the road, and no action taken in relation thereto, until the December term, 1868, of the court of county commissioners, when an assessment of taxes was made to raise moneys to be expended upon and in opening this road, and agents were appointed to superintend its expenditure, and it was ordered that notice of these assessments be published according to law. The petitioners represented that these proceedings were illegal, because no time was fixed for the county to build the road; its cost was not assessed upon each tract enhanced in value, proportionately to the benefits resulting to each; nor was any estimate or assessment of its expense made at the time it was laid out, nor any agent then appointed to build it, or to oversee the labor the land owners might claim to furnish; that all proceedings were closed in April, 1865, and no assessments till December term, 1868, and then only for the repair of an existing road ; and upon a portion only of the land expressly declared to be enhanced in value; and no notice was given to the petitioners of said tax, though they had owned the

land for years, till a forfeiture for non-payment of said taxes had been declared; wherefore they prayed for a writ of certiorari to quash these proceedings.

*Lewis Pierce* and *Moses M. Butler*, pro sese.

*T. T. Snow*, for Hapgood and others.

The fundamental error was in supposing the land owners were compellable to build the road itself, and not merely to defray the expense of its being done. This should be assessed; and as no assessment was made, the error was fatal. Pingree's Case, 30 Maine, 351; Howe's Case, 46 Maine, 332.

The statute required an assessment proportionate to the degree in which the value of the lands of the respective owners is enhanced.

*R. Goodenow*, for the respondents.

WALTON, J. The petitioners complain that their lands have been declared forfeited for the non-payment of a tax, which they aver was illegally assessed to make or repair a road not legally located; and they pray that a writ of certiorari may issue to bring up the records of the assessment and location to the end that the same may be quashed. It is admitted that the facts stated in the petition are true.

We think the writ prayed for must issue. It appears from the copy of the records before us that the county commissioners acted upon the assumption that roads located in unincorporated townships were to be opened and built by the owners of the land over which the roads passed; and they accordingly, as part of their proceedings in locating the way in question, ordered that the owners of the land over which it passed, open and make the same, and then closed their proceedings. This was erroneous. The statute then in force permitted the owners of the land to pay their proportion of the expense in labor, but it did not require them to do so. It required the county commissioners to appoint an agent to open and make the road; and as a part of the proceedings in

establishing it, it required the commissioners to assess upon the lands that would be enhanced in value by the location, a sum sufficient to build the road, which was to be expended under the superintendence and direction of the agent. This they omitted to do. They ordered the owners of the land to build the road—an order which they had no right to make—and omitted to make an assessment for that purpose and appoint an agent to expend it, both of which the law did require them to do. These were grave and fundamental errors, sufficient to vitiate their whole proceedings. See act of amendment of 1858, c. 23, §§ 33, 41.

In 1868, more than three years after the proceedings in locating the road had been closed, the county commissioners undertook to remedy these errors by laying an assessment, which, by virtue of a statute passed the preceding winter, they had a right to do, nominally for the repair of the road, but in reality to build it; and it is for the non-payment of this tax that the petitioners' lands have been declared forfeited. We think the assessment must be regarded as illegal for two reasons. In the first place it was no more competent for the commissioners to lay a tax for the repair of a road not legally located than it would have been for them to lay a tax to build it; and in the second place, the petitioners aver that no notice was given them of the assessment of the tax, and that they had no knowledge of it whatever. This averment we must assume to be true, for it is agreed that all the facts stated in the petition are to be taken as true; and there is no evidence in the case that the notice required by law was given. The copy of the record before us shows that the commissioners ordered the statute notice to be given; but there is no evidence that the order was ever complied with. We must therefore act upon the assumption that it was not.

Our conclusion, therefore, is that the assessment of the tax, as well as the location of the way, was illegal; and that the petitioners are entitled to the writ prayed for.

*Prayer of the petitioners granted.*

APPLETON, C. J., CUTTING, DICKERSON, DANFORTH and VIRGIN, JJ., concurred.